**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

LORA OPPEGAARD,                                    NO.  C09-768-JPD

                          Plaintiff,

        v.                                         ORDER REVERSING
                                                   COMMISSIONER
MICHAEL J. ASTRUE, Commissioner of
Social Security,

                          Defendant.

        Plaintiff Lora Oppegaard appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Court recommends that the Commissioner's decision be REVERSED and REMANDED

for the award of benefits.

                    I.       FACTS AND PROCEDURAL HISTORY

        Plaintiff was a 38 year-old woman at the time of her administrative hearing in 2007.

Administrative Record ("AR") at 28-29.  She has a high school education.  AR at 28.  Her past

work experience includes employment as a food server, waitress, and shipping and receiving

clerk.  *Id.*  Plaintiff asserts that she is disabled due to degenerative disc disease with

tetrolisthesis, affective disorder, anxiety disorder, and dependent personality traits.  AR at 20. She asserts and onset date of June 1, 2002.  AR at 18.

The Commissioner denied plaintiff's claim initially and on reconsideration.  Plaintiff requested a hearing, which took place on July 6, 2005.  AR at 790.  On November 21, 2005, the ALJ issued a partially favorable decision.  AR at 33-55.  He found plaintiff to be disabled from June 1, 2002 through December 31, 2004, but not thereafter.  Plaintiff then appealed this to the Appeals Council.

On September 21, 2006, the Appeals Council affirmed the ALJ's finding that plaintiff was disabled from June 1, 2002 through December 31, 2004, but vacated the decision with respect to the issue of disability beginning January 1, 2005.  AR at 57.  The matter was then sent back to the ALJ for further proceedings.

A second hearing took place before the same ALJ on July 12, 2007.  AR at 800-28.  On August 23, 2007, the ALJ again issued an adverse decision finding plaintiff was not disabled after January 1, 2005.  AR at 18-29.  An appeal was again filed with the Appeals Council with approximately 200 pages of additional medical information.  On April 8, 2009, the Appeals Council denied review and declined to consider the additional medical records.  AR 10. Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Oppegaard bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

1    education, and work experience, engage in any other substantial gainful activity existing in the

2    national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

3    99 (9th Cir. 1999).

4         The Commissioner has established a five step sequential evaluation process for

5    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

6    404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

7    step five, the burden shifts to the Commissioner.  *Id*.  If a claimant is found to be disabled at

8    any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

9    one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

10   §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

11   Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

12   or more medically severe impairments, or combination of impairments, that limit her physical

13   or mental ability to do basic work activities.  If the claimant does not have such impairments,

14   she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

15   impairment, the Commissioner moves to step three to determine whether the impairment meets

16   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

17   416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

18   twelve-month duration requirement is disabled.  *Id*.

19        When the claimant's impairment neither meets nor equals one of the impairments listed

20   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

21   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

22   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

23   to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

24   ───────────────

25        [1] Substantial gainful activity is work activity that is both substantial, i.e., involves
     significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
26   404.1572.

ORDER REVERSING COMMISSIONER - 4

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On August 23, 2007, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3. The claimant has the following severe impairments: degenerative disc disease with retrolisthesis at L5-S1, affective disorder, anxiety disorder, and dependent personality traits.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Medical improvement that was related to the claimant's ability to perform basic work activities occurred by January 1, 2005.

6. After careful consideration of the entire record, I find that, since January 1, 2005, the claimant has had the residual functional capacity to perform a significant range of sedentary work, meaning she is able to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk for 2 hours in an 8-hour workday, with a sit/stand option; to sit 6 hours in an 8-hour workday, with a sit/stand option. She cannot perform forceful pushing or pulling with the lower extremities.  The claimant is unable to climb ladders, ropes, or scaffolds, but is able to occasionally to stoop, crouch, and crawl.  She is unable to tolerate contact with the public and is able to tolerate limited contact with co-workers.

7.    The claimant is unable to perform any past relevant work.

8.    The claimant was born on ███████, 1969[2] and was therefore in the
      category "younger individual age 18-44," at all times relevant to this
      decision.

9.    The claimant has at least a high school education and is able to
      communicate in English.

10.   Transferability of job skills is not material to the determination of
      disability because using the Medical-Vocational Rules as a framework
      supports a finding that the claimant is "not disabled," whether or not
      the claimant has transferable job skills.

11.   Considering the claimant's age, education, work experience, and
      residual functional capacity, there are jobs that exist in significant
      numbers in the national economy that the claimant can perform.

12.   The claimant has not been under a disability, as defined in the Social
      Security Act, from January 1, 2005 through the date of this decision.

AR at 20-29.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ properly evaluate the medical evidence?

2.    Did the ALJ err by making an adverse credibility determination?

3.    Did the ALJ err in his RFC determination?

4.    Did the Appeals Council err by failing to consider records from
      October 2007-August 2008.

Dkt. No. 29.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

VII.   DISCUSSION

A.   The ALJ Erred In His Assessment of the Medical Evidence.

1.   *Standards for Review of Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

1

Opinions from non-examining medical sources are to be given less weight than treating

2

or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

3

opinions from such sources and may not simply ignore them.  In other words, an ALJ must

4

evaluate the opinion of a non-examining source and explain the weight given to it.  Social

5

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

6

more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

7

non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

8

consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

9

957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.  Plaintiff claims that the ALJ erred by rejecting

10

the opinions of Drs. Vath, Beard, and Harmon.

11

2.    *Brian Vath, M.D.*

12

Dr. Vath is a psychiatrist at the Harborview Department of Psychiatry who treated

13

plaintiff for the first time in February 2005.  He followed up with her for about nine months

14

thereafter.  AR at 430-32, 621-22.  Dr. Vath originally assigned a Global Assessment of

15

Functioning ("GAF")[3] score of 60 to plaintiff, but later downgraded her score to 45.  He opined

16

that plaintiff's psychiatric illnesses were:

17
18

"long-standing and have waxed and waned in severity, as is common over the
course of her lifetime.

19

* * *

20

21

22

[3]  The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC

23

ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic

24

attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score
of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals,

25

or "any serious impairment in social, occupational, or school functioning," such as the lack of
friends and/or the inability to keep a job.  *Id.*

26

I believe her depression and chronic pain are separate illnesses that are closely intertwined.  Dr. Beard and I have been coordinating her care closely to try and treat each of these illnesses as aggressively as possible.

* * *

Lora suffers from severe anxiety and PTSD from prior abuse.  She is quite fearful of all situations that are or might be unfamiliar and is frequently so anxious that she cannot leave her apartment, or even her bedroom.  On average, such days occur more than once a week.  Since I began treating her she has missed medical appointments with me because of her agoraphobia even though she knows me and knows how important it is to see me and get her prescriptions filled.  She has frequent and recurrent nightmares (a feature of PTSD); she wakes from them racked with anxiety and terror, with sheets saturated with sweat.

* * *

I am familiar with the Listing of Impairments for Affective Disorders, 12.04, and Anxiety Related Disorders, 12.06.  I believe Lora clearly meets the listing for both disorders.  Lora is not capable of sustaining regular employment in any job, even an unskilled, sedentary job at this time.

*Id.*

The ALJ rejected Dr. Vath's assessment.  He concluded that Dr. Vath's assessments were too highly dependent upon plaintiff's subjective statements, and he found plaintiff to lack credibility.  AR at 22.  The ALJ also found his opinion to be contrary to his treatment notes and contrary to the "longitudinal record as a whole."  AR at 26.

The ALJ erred in his treatment of Dr. Vath's opinions.  With respect to the claim that his opinion was inconsistent with the treatment notes, the ALJ cited a note that indicated that plaintiff was able to go outside and described gardening and that her nightmares were reduced by 20%.  However, in the same note, the ALJ failed to note that plaintiff was "still having violent, disturbing, recurrent visions of past abuse," that her mood was "down" and that her affect was "depressed."  Moreover, rather than overstating or exaggerating her symptoms, Dr. Vath noted that plaintiff was "trying to downplay her illness and to put a good spin on her situation.  Over the course of the past six months of treatment with me she has been unable to maintain that veneer.  It has become evident that she is profoundly impaired by her psychiatric

condition."  Moreover, Dr. Vath concluded that his earlier GAF score of 60 was in error and that it should have been 45.  AR at 621-22.

In short, the ALJ failed to review and consider the entire record.  Cherry-picking references to support a conclusion while ignoring contrary indications in the same report fails to constitute providing specific and legitimate reasons to reject a treating physician's opinions.

### 3.   Dana Harmon, Ph.D.

Dr. Harmon is a licensed psychologist who saw plaintiff in March 2007 at the request of the Department of Disability.  She diagnosed plaintiff with major depressive disorder, cognitive disorder NOS, generalized anxiety disorder and PTSD.  She assigned the plaintiff with a GAF score of 45.  AR at 758.  Dr. Harmon concluded that plaintiff had moderate restrictions in her abilities to understand and remember simple instructions and to carry them out; marked restrictions in her abilities to make judgments on simple work-related decisions and understand and remember complex instructions; and extreme restrictions on her ability to carry out complex instructions and make judgments on complex work-related decisions.  AR at 772.  Dr. Harmon also found plaintiff had moderate restrictions on her ability to interact with the public, and extreme restrictions on her abilities to interact appropriately with supervisors, co-workers, and respond to usual work situations and to changes in a routine work setting.  AR at 773.

The ALJ rejected Dr. Harmon's findings, stating (1) plaintiff misreported the number of psychiatric hospitalizations she had suffered as four, when she had reported only hospitalizations to another doctor; (2) Dr. Harmon's Minnesota Mulitphasic Personality Inventory ("MMPI") testing indicated plaintiff's results were invalid for over-endorsement of symptoms, (3) no other physician reported cognitive limitations, and (4) the GAF score was inconsistent with plaintiff's longitudinal history.  AR at 26-27.

The ALJ's justifications are not supported by substantial evidence and the conclusions cannot be sustained.  In fact, plaintiff's report of the number of her psychiatric hospitalizations

ORDER REVERSING COMMISSIONER - 10

1    to Dr. Harmon was correct.  She was hospitalized on four occasions, two of which were

2    involuntary.  *See* AR at 264-67 (describing two separate hospitalizations); AR at 784

3    (describing two other hospitalizations).  *See also* AR at 304 (Dr. Sandvik, M.D. referencing

4    four prior hospitalizations for psychiatric reasons).  Moreover, in 2007, she was hospitalized

5    again at the University of Washington Medical Center for 8 days, and in 2008 she continued to

6    have problems.[4]  The first reason offered for rejecting Dr. Harmon's findings has no basis in

7    the record.

8         Dr. Harmon concluded that the MMPI test results showed that plaintiff answered in an

9    extremely exaggerated manner, endorsing a wide variety of rare symptoms and attitudes.

10   "These results may stem from a number of factors that include excessive symptom checking,

11   falsely claiming psychological problems, low reading level, a plea for help, or a confused

12   state."  AR at 763.  From this list of possible explanations, the ALJ chose symptom

13   exaggeration, without providing a basis for his choice.  AR at 26.  Dr. Harmon, who

14   administered the test did not.  Instead, Dr. Harmon opined that plaintiff "seemed to give her

15   best effort," and that the test results on the WMS-III and Trails were "valid estimates of her

16   memory functioning."  *Id.*  Moreover, Dr. Harmon had the opportunity to observe plaintiff, and

17   noted she presented as "fatigued and depressed."  AR at 758.

18        By speculating as to the reasons why the MMPI test produced invalid responses, the

19   ALJ committed error.  As an expert in this area, Dr. Harmon was able to interpret the valid

20   data and reach conclusions consistent with that data.  The ALJ simply seized on one of the

21   possible reasons for invalidity, failing to account for legitimate reasons for the scoring that had

22

23        [4]  Supplemental records of her hospitalization were sent to the Appeals Council to be
     included in the record.  The Appeals Council did not make these records part of the record,
24   although they have been docketed.  Doc. No. 15-19.  One issue raised in this appeal is whether
     the Appeals Council erred by not including these documents in the record, and whether this
25   Court may nonetheless review the records, as part of that assignment of error.  In light of the
     Court's decision on the record that does not include the new medical evidence, this issue is
26   moot.

ORDER REVERSING COMMISSIONER - 11

1    nothing to do with symptom exaggeration.  The ALJ offered no reason for choosing the reason

2    that he did.  The ALJ should have done this, if he wished to use this as a justification for

3    rejecting an examining physician's opinion.  The second reason proffered by the ALJ to reject

4    Dr. Harmon's report lacks support in the record.

5            The third reason given by the ALJ to reject Dr. Harmon's report is that Dr. Harmon

6    found plaintiff suffered from cognitive deficits, and Dr. Harmon was the first to mention this.

7    Being the first is not a valid justification for rejecting an examining physician's opinions.

8    Moreover, it appears that Dr. Harmon was the only physician to actually conduct cognitive

9    testing.  The results of the cognitive testing were determined to be valid.  AR at 757-60.  The

10   ALJ's third reason to reject the opinion of Dr. Harmon is without merit.

11           Finally, the ALJ found that the GAF score of 45 was inconsistent with plaintiff's

12   longitudinal history.  This statement ignores the multiple references to plaintiff's continuous

13   periods of mental illness, her agoraphobia, and observations of plaintiff appearing "nervous,"

14   "fidgety" and "anxious."  *See e.g.*, AR at 431, 428, 417, 634.  The ALJ's final basis for

15   rejecting Dr. Harmon's opinions is not supported by the record.

16                      *4.    John Beard, M.D.*

17           Plaintiff was also seen by Dr. Beard, who served as plaintiff's primary care physician.

18   In May 2005, Dr. Beard opined:

19           She has had episodes, as shown in the past, with hospitalizations resulting in
20           decompensation at times.  She has really been unable to function independently
             recently.  Does have a history of physical and sexual abuse, does have some
21           signs of PTSD. . . . She needs assistance with regular activities.  She notes a
             decrease in energy, feelings of worthlessness, difficulty with concentration and
22           occasional suicidal thoughts.  This has resulted in greater than two to three years
             of inability to hold a job, inability to do her regular activities of daily living, and
23           she has had repeat episodes despite being on medications which have
24           moderately controlled her symptoms.

25                                              * * *

26

ORDER REVERSING COMMISSIONER - 12

> I feel based on the anxiety and depression symptoms alone, she shows signs that are consistent with requirements for disability under social Security Disability Sections 12.04 and 12.06. . . . She does have limitations as to her ability to make clear decisions, to perform routine tasks and significantly impacted on social interactions. She has difficulty maintaining sustained concentration, pace and persistence. Has significant difficulty in adapting to change. Has significant difficulty with tolerating stress and does clearly shows (sic) signs of decompensation.

AR at 412-13.

The ALJ rejected this opinion, and an earlier opinion dated November 20, 2003 that was similar in its diagnosis of the plaintiff. AR at 377-78. The ALJ based his rejection on his belief that the medical limitations were based on plaintiff's subjective complaints, which the ALJ did not think were credible and that, at least until Dr. Harmon, other physicians had not detected difficulty in concentration. AR at 27.

The ALJ's credibility decision will be discussed in greater detail below. At this point, it is only necessary to state that the ALJ erred in this regard as well. As to the concentration issue, it is important to note that both Dr. Harmon and Dr. Beard found that plaintiff had the same issues. Dr. Beard's conclusions are consistent with those of Dr. Harmon, which the Court has determined were rejected by the ALJ in error. The ALJ similarly erred in his treatment of Dr. Beard's opinions.

### 5.   Conclusions Regarding Medical Evidence

The ALJ rejected the medical opinions of two treating physicians and one examining physician, all of whom agreed that plaintiff's mental impairments precluded her from working. At oral argument, the government conceded that there were *no medical reports* that contradicted the conclusions of these three physicians. As a result, the ALJ had to provide clear and convincing reasons to reject the reports. He did not do so. This matter must be reversed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

B.      The ALJ Erred in Making an Adverse Credibility Determination

The ALJ made an adverse credibility determination.  Credibility determinations are particularly the province of the ALJ.  *Andrews*, 53 F.3d at 1043.  Nevertheless, when an ALJ discredits a claimant's subjective testimony, he must articulate specific and adequate reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically-determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  When evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  *Greger*, 464 F.3d at 972 (internal quotation omitted).  General findings are insufficient.  *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Smolen*, 80 F.3d at 1284.

There was no suggestion that plaintiff was malingering.  Accordingly, the ALJ was required to provide "clear and convincing" reasons for rejecting her testimony.  The Commissioner argues that the ALJ properly based his decision on (1) inconsistent statements

ORDER REVERSING COMMISSIONER - 14

1    by plaintiff, (2) decreased medication usage, and (3) lack of continuing treatment with a mental

2    health specialist.  Dkt. No. 25 at 16-18.

3           The ALJ's offered justifications for entering an adverse credibility determination fall

4    short of the "clear and convincing" standard.  As to the first issue, the Commissioner claims

5    the ALJ stated that plaintiff did not present her symptoms in a forthright manner, and then

6    modified her behavior to overstate the symptoms.  AR at 21, 26, Dkt. No. 25 at 16.  The ALJ

7    got it backwards.  As noted above, plaintiff initially tried to downplay her symptoms.  After

8    treating plaintiff, *Dr. Vath* determined that her condition was far more serious than plaintiff

9    initially presented.  This is hardly a case of "overstating."

10          The ALJ pointed to plaintiff's decreased medications usage as evidence her condition

11   improved over time.  AR at 23.  The Commissioner cites to Dr. Beard's report dated May 2,

12   2005 that plaintiff was "interested in gradually tapering down on her medication" and "[i]s

13   finding that she is having some success with this."  AR at 411.  In addition, the Commissioner

14   cites to a Dr. Beard's report dated February 11, 2005 that she has been "tapering down on her

15   medications."  AR at 435.  Finally, the Commissioner cites to Dr. Beard's note dated July 5,

16   2005, that she wanted to go off oxycodone, as she was not tolerating it well and that she

17   believed she no longer required medication for breakthrough pain symptoms.  However, in

18   July 2005, plaintiff was back on oxycontin and using oxycodone for breakthrough pain

19   symptoms.  AR at 666.  Moreover, in 2006 she was continuing to need additional drugs for

20   breakthrough pain.  AR at 636.  The record does not support the ALJ's reason for discounting

21   plaintiff's testimony.

22          Finally, the Commissioner argues that the fact that plaintiff did not continue to see Dr.

23   Vath, a mental health specialist, is indicative of the intensity of the plaintiff's mental health

24   symptoms.  Dkt. No. 25 at 17.  However, Dr. Vath and Dr. Beard worked closely together.

25   Moreover, her missed appointments were explained by transportation difficulties.  In light of

26   the very extensive record in this case documenting plaintiff's mental impairments, this does not

ORDER REVERSING COMMISSIONER - 15

amount to a clear and convincing reason to discount her testimony.  The ALJ's adverse credibility determination is not supported by substantial evidence and must be reversed.

### C.   Remand for Award of Benefits Is the Appropriate Relief

It is unnecessary to address plaintiff's remaining assignments of error.  Remand is required.  As noted above, a remand for award of benefits is appropriate when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  In this case, *all* treating and examining physicians have concluded that plaintiff is disabled.  That there is *no* opinion from any medical source to the contrary was conceded by the Commissioner during argument on this matter.  Accordingly, there are no outstanding issues that must be resolved, and it is also clear from the record that the ALJ would be required to find the plaintiff disabled. This case has already been through two administrative hearings.  Plaintiff's initial claim was filed in 2002.  There is nothing to be gained by sending it back for another hearing.

### VIII.   CONCLUSION

For the foregoing reasons, this matter is REVERSED and REMANDED for the award of benefits.

DATED this 31st day of March, 2010.

*James P. Donohue*

_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER REVERSING COMMISSIONER - 16